# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LAWRENCE ENWEZE**<br>12430 Park Potomac Avenue<br>Unit 417<br>Potomac, MD  20854<br><br>        Plaintiff,<br>v.<br><br>**DENIS MCDONOUGH, SECRETARY**<br>**U.S. DEPARTMENT OF VETERANS**<br>**AFFAIRS**<br>810 Vermont Ave<br>Washington, D.C. 20420<br><br>        Defendant | Civil Action File No.:<br>(Jury Trial Demanded) |

## COMPLAINT

Plaintiff, Dr. Lawrence Enweze ("Dr. Enweze" or "Plaintiff"), by and through his undersigned counsel, brings this Complaint against Denis McDonough, Secretary of Veterans Affairs ("Defendant"), by averring as follows:

## INTRODUCTION

1.  This is an action brought by a current employee of the United States Department of Veterans Affairs ("VA" or "Agency") for retaliatory hostile working environment.

2.  Dr. Enweze's claims arise pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e - 3(a) ("Title VII"), which prohibits retaliation against an employee for engaging in protected activity.

3.  These claims, supporting facts, and damages set forth in this action are referred to as the "Lawsuit."

## PARTIES

4. Dr. Enweze is of Nigerian national origin, Black, and a resident of the State of Maryland. At all times relevant to this lawsuit, Dr. Enweze was an employee of Defendant within the meaning of Title VII.

5. Defendant, Denis McDonough, is the Secretary of Veterans Affairs and therefore is an "employer" and agency or department head within the meaning of Title VII and its implementing regulations.

## SUBJECT MATTER JURISDICTION AND VENUE

6. Jurisdiction of this matter arises under 28 U.S.C. § 1331 with federal questions involving Title VII.

7. Venue is proper in the District of Columbia under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because Defendant is in and Plaintiff works in Washington, D.C.

## PRIOR PROTECTED ACTIVITY/ LAWSUITS

8. On October 2, 2018, Dr. Enweze filed a timely formal complaint with the VA's Office of Resolution Management Diversity and Inclusion ("ORMDI") alleging discrimination based on national origin (Nigerian), race (African), color (Black), and age (over 50) due to the Veteran Administration Medical Center's ("VMAC") failure to convert him to a full-time physician employee. The complaint was received by the Agency and thereafter assigned a Docket Number of VA 2004-0688-2018105712. ("Agency Complaint 1").

9. On or about November 30, 2018, the Agency issued a letter of acceptance for investigation of the agency complaint. Eventually the Agency investigated the complaint and issued a Report of Investigation ("ROI").

10. During the pendency of the investigation into Agency Complaint 1, on August 26, 2019, Dr. Enweze filed a new formal Equal Employment Opportunity complaint with the VA's ORMDI alleging retaliation and discrimination based on national origin (Nigerian) and color (Black). The complaint was received by the Agency and thereafter assigned a Docket Number of VA 2004-0688-2019104620. ("Agency Complaint 2").

11. The VA also investigated Agency Complaint 2, culminating in the ROI. The investigation into Agency Complaint 2 remained open and ongoing through May of 2020.

12. On November 10, 2020, a Final Agency Decision ("FAD") was issued for Agency Complaint 1. The FAD denied all forms of relief to Dr. Enweze. On February 6, 2021, Dr. Enweze timely filed suit in the United States District Court for the District of Columbia in the matter styled *Enweze v. Tran*, Case No. 1:21-cv-00336 (D.D.C. 2021)("Enweze Lawsuit 1").

13. Dr. Enweze requested an FAD for Agency Complaint 2, which was issued and received by Plaintiff on March 23, 2021. The FAD denied all forms of relief to Dr. Enweze. On June 20, 2021, Dr. Enweze timely filed suit in the United States District Court for the District of Columbia in the matter styled *Enweze v. McDonough*, Case No. 1:21-cv-01659 (D.D.C. 2021)("Enweze Lawsuit 2").

14. Enweze Lawsuit 1 and Enweze Lawsuit 2 have since been consolidated by the Court into a single action which is open and pending.

## ADMINISTRATIVE UNDERTAKINGS

15. Following informal EEO counselor contact on October 1, 2020, Dr. Enweze thereafter filed a new formal Equal Employment Opportunity complaint with the VA's ORMDI on November 12, 2020 alleging retaliatory harassment and a hostile working environment. ("Agency Complaint 3").

16. The VA investigated culminating in the ROI. The investigation into Agency Complaint 3 remained open and ongoing through May of 2021.

17. Dr. Enweze requested an FAD, which was issued and received by Plaintiff on September 3, 2021. The FAD denied all forms of relief to Dr. Enweze.

18. Dr. Enweze had ninety calendar days in which to initiate a lawsuit following the receipt of the FAD. The instant lawsuit has been timely filed within 90 days of his receipt of the FAD.

19. All conditions precedent necessary to file this Lawsuit have been met.

## FACTS

### Background

20. Dr. Enweze is employed as a Clinician Physician in the Emergency Department ("ED") at the Washington VA Medical Center ("VAMC") located in Washington, D.C.

21. As more thoroughly pled and alleged in Enweze Lawsuit 1 and Enweze Lawsuit 2, throughout his approximate thirteen-year career at VMAC, Dr. Enweze has been subjected to discrimination, retaliation, and disparate treatment on the bases of his national origin, color, and age, particularly over the VMAC's failure to convert him to a full-time physician employee, in violation of proper policies, procedures and appropriation requirements.

22. Dr. Enweze had complained of discrimination and retaliation, including filing two complaints with ORMDI and two federal court lawsuits (now consolidated), which remain open and pending.

23. Dr. Philip Seton ("Dr. Seton"), at all times pertinent to this Lawsuit, has been Dr. Enweze's first line supervisor and has been the Chief of the Emergency Department. Dr. Kevin Jeng ("Dr. Jeng") has been his second line supervisor and Dr. Charles Faselis ("Dr. Faselis") was

the Chief of Medicine, now, the Chief of Staff. For all times pertinent to this Lawsuit Dr. Faselis has supervised Dr. Enweze, Dr. Seton, and Dr. Jeng.

24. Dr. Enweze's supervisors are aware of Dr. Enweze's prior protected activity due to their involvement in the investigatory process related to Dr. Enweze's prior Agency EEO complaints. Dr. Enweze's supervisors are also aware of his lawsuits (now consolidated), which remain open and pending.

25. This Lawsuit represents a continuation of the retaliatory work environment Dr. Enweze was subjected to for engaging in protected activity, including harassment, humiliation, serious and false accusations of professional malfeasance, hyper-scrutiny, and monitoring, and being treated as a problematic employee or troublemaker.

Process of the Administration of Treatment in the Emergency Department

26. By way of background, for the safety and proper treatment of patients, the VA follows a multi-phase procedure for patients admitted to the Emergency Department (Fast Track), referred to a Phase 1, Phase 2, and Phase 3, respectively.

27. In Phase 1, a patient admitted to the Emergency Department is triaged by an attending nurse in the main treatment area who: (i) takes a brief history of the patient; (ii) performs a quick clinical assessment; (iii) orders tests (if warranted); and (iv) rates the patient and the underlying medical issues pursuant to an Emergency Severity Index ("ESI"). Upon completion of triage, the nurse will then assign the patient to either the "Fast Track" or "AEC" area for care depending on the severity of the situation.

28. Once a patient is placed in a room in the Fast Track or AEC area, a message will display on the Emergency Department Integration Software ("EDIS") board stating, "Awaiting MD evaluation."

29.     Phase 2 involves having the physician who will initially provide care assign his or her name to the patient, which will also be denoted on the EDIS board.

30.     Phase 3 involves physician evaluation and actual treatment of the patient through disposition.

Allegations of Inappropriate Clinical Practice

31.     On August 18, 2020, a John Doe patient arrived at the Emergency Department with complaints suggestive of a possible heart attack and was immediately assigned a level 4 ESI rating and taken to the Fast Track treatment area.

32.     Upon arrival at Fast Track, a nurse named Darleen Hawkins ("Ms. Hawkins") reviewed the intake records and noticed that the patient had not undergone a complete Phase 1 assessment. Ms. Hawkins also determined that the patient should not have been assigned a level 4 ESI rating and returned the patient to the main treatment area for a complete Phase 1 assessment, and further instructed the medical technician, Dana Griffith ("Ms. Griffith"), to perform an EKG study on the patient.

33.     Dr. Enweze was working in the Fast Track area at the time but had no knowledge or involvement with this patient or Ms. Hawkins' triage decisions. At no time had Dr. Enweze been assigned to this patient or treated the patient in accordance with Phase 2 and Phase 3 protocols.

34.     Sometime thereafter, Ms. Griffith approached Dr. Enweze and indicated that she had the EKG results for the John Doe patient that Ms. Hawkins had ordered. Insofar as the patient was in transit back to the main treatment area for assessment, Dr. Enweze instructed Ms. Griffith to deliver the EKG results to the triage nurse for consideration in connection with the Phase 1 evaluation.

35.     Later that same day, Dr. Seton approached Dr. Enweze in a visibly agitated manner in front on the entire Fast Track staff and openly berated him about the John Doe patient. Shockingly, Dr. Seton unprofessionally accused Dr. Enweze of inappropriate clinical practice, and further falsely accused him of refusing to review EKG results of his patient – a very serious accusation for a physician - even though Dr. Enweze had not ordered the EKG study and had not been assigned to this patient.

36.     Dr. Seton's accusations were false and humiliating to Dr. Enweze. Dr. Seton made these accusations without knowledge of the facts and without focusing on the actions of the other professionals involved.

37.     Dr. Seton engaged in this behavior just weeks after the filing of Enweze Lawsuit 2.

38.     On August 19, 2020, the following morning, Dr. Seton forwarded an email to Dr. Enweze indicating that VAMC was in the process of reviewing the case involving the John Doe patient who had undergone an EKG. In his email, Dr. Seton admonished Dr. Enweze for failing to "look at the EKG," and for failing to "**Sign[] the EKG, document the time received and date it.**" (Emphasis in original). The email asked for his written account of events and threatened that if they concluded that he deviated from this practice he would be reprimanded.

39.     On the morning of August 20, 2020, a "huddle meeting" took place with the morning and night staff in the Emergency Department. During this meeting, Dr. Seton again disparaged Dr. Enweze with false accusations of improper care towards the John Doe patient in front of the entire staff and openly threatened to reprimand him, all of which caused him great humiliation.

40. On August 25, 2020, Dr. Enweze provided a written account of events regarding the John Doe patient and explained in detail how the patient had never been assigned to him and that the patient had not properly been through triage, in violation of medical protocols. Despite this, Dr. Seton continued to target Dr. Enweze.

41. On August 27, 2020, Dr. Seton, and Dr. Jeng scheduled a meeting with Dr. Enweze in which they, once again, falsely accused him of inappropriate clinical care and threatened him with discipline relating to the care of the John Doe patient. The tenor of the meeting was tense, and Dr. Seton continued to berate Dr. Enweze.

42. On September 1, 2020, Dr. Enweze forwarded another email detailing the events and circumstances surrounding the John Doe patient. In his email, Dr. Enweze further challenged the ongoing attempts to make him a scapegoat and smear his reputation.

43. The email notes, in part, "I have been accused of something I did not do, and these accusations were made in front of other employees." The email further notes, "[i]n light of the reality that I did not have the EKG in my hand and that the patient was not assigned to me but was redirected to Main ED….why am I the person who continues to be placed in the cross hairs?"

44. The following day, on September 2, 2020, Dr. Jeng responded to Dr. Enweze and confirmed receipt of his email. Dr. Jeng's email, however, suggested for the first time that Dr. Enweze was now being subjected to a "peer review" for his actions or inactions that day.

"I am in an Ongoing Battle with the VA pertaining to my Employment"

45. Exasperated that an open peer review case had been initiated, Dr. Enweze responded to Dr. Jeng and Dr. Seton on September 10, 2020 with an email expressing incredulity that there was an "open case" against him.

46. In his email, he states, in relevant part that, "[m]y concern is that I, alone, appear to be in the crosshairs of something and I do not have an understanding of what prompted this… I am in an ongoing battle with the VA pertaining to my employment and it includes discrimination and retaliation complaints. In fact, within the last couple of weeks, I was being cajoled to leave my current position and certain statements were made to others pertaining to my supposed interest in another position. Yet, I have never expressed interest in that position. For this reason, I am particularly mindful and suspicious of this situation."

Additional Peer Review Case

47. On September 15, 2020, Dr. Enweze was called into another meeting with Dr. Seton and Dr. Jeng at which time he learned that they intended to address another peer review case against him pertaining to his treatment of a patient that took place in early May of 2020, four months prior.

48. During the meeting, Dr. Enweze was presented with a memorandum stating that a peer review committee had concluded that his treatment of a patient in May of 2020 was inappropriate and that "competent practitioners would have handled the case differently." The memorandum stated that the peer review committee had adopted a new practice requiring him to have this addressed with the Dr. Faselis, the section chief.

49. Although the peer review process is supposed to be non-punitive in nature, the findings are, nevertheless, placed in the physician's file and can be relied on to form the basis for licensing and hospital privileges. The peer review process, as in this case, can also be weaponized to manufacture a record and portray a physician in a bad light and otherwise lower their professional stature.

50. Collectively, Drs. Seton, Jeng, and Faselis were attempting to target Dr. Enweze for removal or otherwise dissuade him from pursuing his ongoing complaints of discrimination and reprisal.

### "Maybe You Should Consider Not Practicing Here"

51. Dr. Enweze in good faith challenged the need to having his treatment decisions questioned in the peer review process.

52. For example, on September 22, 2020, Dr. Enweze forwarded an email to Dr. Seton and others expressing his surprise and shock concerning the secretive peer review process relative to patient treatment in May of 2020. Dr. Enweze asked for the details regarding the process, the standard employed, and how many physicians were being subjected to the peer review process in the last year.

53. The following day, on September 23, 2020, Dr. Faselis forwarded an email to Dr. Enweze stating, in relevant part: "I am certain you are familiar with the peer review process…. In this case all people involved, including myself, that reviewed the case felt that you did not provide the standard of care for our patient. If you feel the peer review process, which is mandatory and standardized across the VA, is not something you can deal with then maybe you should consider not practicing here."

54. Dr. Faselis' statement confirmed that his true motivation was to push Dr. Enweze to leave the VA.

55. On September 29, 2020, Dr. Faselis abruptly told Dr. Enweze that if he was unhappy with the peer review findings, he should end his employment at the VA.

56. The ongoing mistreatment, unrelenting campaign of harassment, and hostility caused grievous harm to Dr. Enweze's emotional and mental well-being.

## COUNT I
## HOSTILE WORKING ENVIRONMENT – RETALIATION

57. Dr. Enweze incorporates by reference all paragraphs contained in the Complaint as if more fully set forth herein.

58. At all times relevant to this Lawsuit, Dr. Enweze was an "employee" and the Agency was an "employer" within the meaning of Title VII.

59. During the times specified in this Lawsuit, Enweze Lawsuit 1, Enweze Lawsuit 2, Dr. Enweze repeatedly engaged in protected activity by opposing, complaining, and raising the Agency's illegal and discriminatory and harassing practices, including but not limited to the filing of a federal court lawsuits and multiple EEO complaints.

60. Title VII makes it unlawful for an employer to retaliate against an employee for opposing the employer's discriminatory practices or participating in any investigation or proceeding.

61. The Agency violated Dr. Enweze's right to Equal Employment Opportunity by retaliating against him by subjecting him to a hostile working environment, repeatedly thwarting his professional career advancement, and otherwise engaging in actions designed to dissuade him from making or supporting his complaints or engaging in further protected activity, all of which caused Dr. Enweze economic damages and ongoing emotional harm in violation of the anti-retaliation provisions of Title VII.

WHEREFORE, Dr. Enweze demands judgment against Defendant and seeks the following relief:

  a. Economic damages;

  b. Compensatory damages;

  c.  Prevailing party attorneys' fees, expenses, and costs;

  d.  Pre and Post-Judgment interest;

  e.  Injunctive relief; and

  f.  Such other relief as his causes permit.

## DEMAND FOR TRIAL BY JURY

Dr. Enweze demands a trial by jury in this action.

            Respectfully Submitted,

            /s/ Timothy W. Romberger
            Timothy W. Romberger
            D.C. Bar No. 458225
            1025 Connecticut Avenue, N.W.
            Suite 1000
            Washington, D.C. 20046
            (202) 248-5053
            (703) 582-6494 Cell
            timromberger1@comcast.net

DATE: October 28, 2021